Good morning, Your Honors. Daryl Krohn along with Stephen Ames Brown for Appellant Artists Rights Enforcement Corporation and may it please the Court. The first issue in this appeal is whether the amount in controversy for purposes of diversity jurisdiction can be based solely on a record of past royalty payments with no other evidence whatsoever including, for example, expert testimony as to what future royalties would be. There was no expert or nobody that testified about a projection of future? None whatsoever, Your Honor. The only evidence that was presented to the District Court was the past history of royalty payments. So are you arguing that that has to be, that that projection forward is a factual question and the Court does not have the authority to make that extrapolation himself or itself? Rather there has to be evidence on that before the Court can make that extrapolation? Yes, Your Honor, that there has to be evidentiary foundation for the extrapolation. You don't think that the Court could, by the basis of past royalties, make, say that that is the evidence that I can use now to make a reasonable extrapolation of what that will be in the future? No, we don't believe that's the case, Your Honor. Okay, thank you. Why isn't that your burden of proceeding? Why isn't it your burden to come forward and say there's no possibility? And you're referring to the legal certainty standard, Your Honor? Is that what you're referring to? There, under this Court's, as this Court recently reiterated in AFI v. Frye, under the legal certainty standard, one of the things that the defendant can point out is that the plaintiff's calculation of the amount in controversy is infirm as a damages metric. And what we've done, and I can't think of anything that is more proof that the amount in controversy is legally certain to be less than $75,000 is to show that the plaintiff has not come forward with any evidence and, in fact, is speculating. In terms of what our burden is, again, under AFI v. Frye, is to point out that what the plaintiff has done is speculate. Our position is that any evidence would be speculative as to what the future royalties would be, and it's difficult. So your position is that this, that the contract in the future is just not worth very much? That's correct, Your Honor. I mean, it sure seems like a lot of fighting between sophisticated lawyers and firms over a contract that isn't going to be worth even $75,000. And it seems to me that your client was fighting pretty hard to keep this out of federal court in order to preserve a contract that he's now alleging isn't worth anything. That's a little bit of an irony, counsel. It is. And I will say, I mean, this is not in the record, Your Honor, but my client has this contract. It's a contract that's entered into with many, many other clients. So it's not just this contract that, from its perspective, is at issue in this case. And I agree. There was quite – we went through trial. We're here on appeal. We think that's an important principle that's at stake here, diversity, jurisdiction in terms of – But this is a contract of indefinite duration, correct? It is, Your Honor. And the plaintiffs were seeking to rescind the entire contract, right? To terminate, yes, Your Honor. So to get the value of this. And, Your Honor, they could have come forward with, for example, what is the market value, the present value of the future right to receive royalties. Well, yeah, but in doing that, they would look at the past royalties. Potentially. How else would you do it? I agree, Your Honor. There was no guaranteed royalty. Right. So they would need to – so someone would need to give opinion testimony based on a certain amount of periods. They would testify as to, in their experience, how reliable it is to measure that, how far into the future they can reliably measure it. I'm not sure that a district court judge – under the test that we've set, I'm not sure that the district court judge needs an expert opinion on that. I don't know why the district court judge can't make that assessment on its own. Well, I think under the Supreme Court's end-to-end standard fire insurance decisions that when we're discussing – because federal jurisdiction cannot be based on contingent future events, that there would need to be a present value established as to the royalties. And so, therefore, there would need to be some foundation for that, and, therefore, there needed to be some expert opinion. Do you think that in order to meet the $75,000 that you have to take future projections and then you have to discount it? You can't take absolute dollar figures. That is, if they say, well, we anticipate that in the year 2018 we're going to get $10,000, and you're going to say, well, yes, but the present value of $10,000 is not $10,000. It's something less than that. I think if we were discussing to the extent that the jurisdiction is being based on contingent future amounts and we're discussing an amount that is 20 years in the future, yes, I do think you would have to bring it to present value. Any cases in which somebody has discounted it in that way? Point to any decision in which a court has said you have to – projected future income or payments or whatever has to be discounted. Where future payments are uncertain. I don't believe the Aetna case did discuss present value, no, Your Honor. Okay, but is there any case? I didn't see any case in which a court said we're going to have to discount the future value in order to get present value. And I don't believe there is, Your Honor, but I don't think that is – we don't even have evidence of any projection by an expert. What other measure could somebody use in a case like this where you're getting royalties off of, you know, playlists for what they would get in the future? Well, in addition to someone, an expert in the field saying or a manager of the royalty saying that in their opinion, in their experience, this is – I can reliably measure that there's going to be X number of royalties. We had 20 years of history. Right. I mean, do they have to provide somebody who's an arbiter of musical tastes to say, yes, this is going to continue to be of interest to the public? No, but they could – what they could come forward with is what is present market value for the sale of a future royalty stream such as this one. And, again, that's something else that the plaintiff did not come forward with in this case. But that would be another way of looking at it. Let me ask you about that. Like my colleagues, I was concerned about whether we'd use present market value or not. But I didn't see a hint of that issue having been raised below or decided by the district court. It was – so did I miss something or was that simply nobody really even addressed the present discounted value? We didn't, Your Honor. We didn't even get there. We did not because we didn't get there because – And the court didn't. And even on the briefing now, nobody addressed it. All three of us have been curious about that, but apparently nobody else was curious about it in this record. That's correct, Your Honor. Why don't you turn to the merits because your time is ticking down. Yes, Your Honor. On the merits, the first issue I'd like to address is the district court's termination of this contract. And the court terminated on the basis of a dispute over the fee as to a single payment for a single royalty period. And that's, as Your Honor pointed out, the 25 percent rate that was going to be perpetual in the contract. Under established Washington Supreme Court law, the test for a repudiation of a contract or termination of a contract is that there is a substantial or total failure of consideration. That's in the Cartosian and the Scott-Paper cases. There is no record evidence of a substantial or total failure of consideration here. In fact, the record evidence and the findings of the district court were to the contrary. The findings were the artist's rights provided the consideration that was due under the contract, the performance services rendered, and it uplifted – that it's worked to uplift the royalty rates that were being paid by Sony to the trust. The issue – accepting the district court's decision would result in not just – just by its reasoning also mean that any time there is a dispute with royalties, it could lead to the termination of a contract. And so, for example, in the – just relative to this case, the underlying dispute with Sony over royalties between the trust and Sony could have led to a termination of the underlying artist contract. The trust didn't argue that and didn't argue that for good reason. If there's a dispute over royalties, the remedy is damages and perhaps declaratory relief. It isn't termination of the contract. And so, for example, this – Except that here it – the – your client took another 25 percent royalty as a payback for royalties previously waived, and there is nothing in the contract that supports that, right? They're not even arguing they had that contractual right. Yeah, that's correct, Your Honor. These were events that took place after the – And so then the only question is, was that sufficiently serious to constitute a substantial breach? Is that where we are? Well, the 25 percent fee was – artist rights was entitled to the 25 percent fee. But not the 50 percent. That's correct. But the additional 25 percent between 25 and 50 was an attempt to recoup 25 percent. But during those earlier years, they said, We're not claiming the 25 percent. And so now after those were calculated, they're saying, Now we want to go back and have a grab back, and yet they're not arguing the contract ever gives them that right. The argument was that the contract gave them the right to the 25 percent fee, and the district court's finding was that there was no agreement between the parties as to a later recoupment when artist rights didn't collect that fee for certain periods. That is true, Your Honor. It's not just a matter that they didn't collect it, because they actually sent a letter and said at no charge. That is the case, Your Honor. They did. So let me ask – the district court in its findings of fact on this particular issue said REC's breach is material because it deprived the trust of a significant portion of the royalty payment it expected and irreparably damaged the trust faith in REC. What's wrong with that? What's wrong with that, Your Honor, is that you could say that in every royalty dispute with every record company or with any movie studio in which there's a royalty dispute. This court regularly hears appeals from royalty disputes with movie studios or record companies in which hundreds of thousands or millions of dollars are in dispute with respect to how a contract is interpreted and what royalties are or not have been paid over many years. And every time you could say the same thing that the district court here said where there's been some breach of faith in the – Well, in the context of this contract, wasn't the trust's desire to maximize its royalties sort of a critical part of why they switched to REC? That certainly was the case. But you could again say that one of the reasons that royalty participants enter into contracts with, again, counterparties is usually to maximize their royalties. They had some others. What was it they had? Who was the other firm that they had helping them to do periodic audits? The Webman firm. Webman. So they actually first got from Sony. Then they got from Webman. Then they got the AREC. I mean, so it showed that they were continually searching for somebody that they could really trust that would maximize their royalties in this case. Are you disputing the factual finding by the district court that this was an important – that this went to the essence of their contract desires? We're not disputing the finding that it was important to them to maximize their royalties. The district court could have come out the other way, and I suppose we might say that would be defensible, too. But are you saying it's not – but the court came out saying it was material, and you're saying we should say that was a clearly erroneous finding? Your Honor, the question is whether or not it was a substantial or total failure of consideration. It's our position that a dispute over what the fees were and should have been paid to artist rights after it had already completed all of the work that it was called on to do is not grounds for termination of the contract. I'd like to reserve – Okay, that's fine. You can save the minute and a half. Thank you, Your Honor. That's fine. We'll hear from the other side. Thank you. Thank you, Your Honor. My name is Yale Lewis, Hendrickson Lewis in Seattle, appearing on behalf of the trust. May it please the court. I want to deal just briefly with the jurisdictional amount and make the observation that the case law is, in fact, very clear. Could you pull the mics a little bit closer or lean in a little bit? That the case law, including Supreme Court case law, is very clear that so long as there is a right to payment, the fact that the plaintiff can't establish the amount of each payment is not significant. And in this case, the right to payment is clear. Sony has an obligation to make royalty payments to the trust forever. The appellee, the appellant, is contending that it has a right to 50% of that forever. And the amounts are not de minimis. The court knows or we have pointed out the last year before the litigation began, the royalties from Sony were over $16,000. The AREC in this case is claiming damages of $48,000. And the trust on the one-year basis was claiming around $4,000. So there is plenty of money at stake. It will go on forever. The trust over the previous 18 years had $183,000 from Sony in regular payments and $250,000 in audit payments. So $183,000 plus $250,000 is what came in over the previous 18 years. And, in fact, in the previous five years, as set out on page 24 of our brief, in the previous five years, 2006 to 2010, the annual payments, the regular annual payments were $37,883, plus there was $120,000 in an audit. So $120,000 and $37,000 is $150,000. Clearly, the evidence in the record upon which two district court judges relied was that the likelihood of payment was sufficiently great that the court had jurisdiction. Okay. Why don't you turn to the merits, which I don't think is an easy call. I beg your pardon? The merits. Yes. Yes. Thank you, Your Honor. On the merits— Why is this breach so serious that it warranted cancellation of the contract? Your Honor, the— In the scheme of things, it doesn't look all that serious. Well, the district court felt that it was, obviously, and the findings of the district court are entitled to substantial discretion. The court ran— We're not going to set them aside unless we were to conclude that they were clearly erroneous. So I get you on that, but nonetheless, what happened here, why does it rise to a level of such a serious breach that the district court was warranted in concluding that the contract should be rescinded? The district court listened to two days, full, long days of intense evidence of basically two people, Mr. Stanczak, who was a trustee of the trust, and the president of the AREC. And from that, it seemed very, very clear that AREC knew exactly what it was doing when it doubled the amount of royalty it was entitled to keep. The court, therefore, finds that AREC wrongfully retained $1,500. It did that on one occasion, though. Well, it did it on one occasion because immediately after that, the trust contacted Sony and revoked its authority for Sony to send the money to AREC. Well, I mean, it didn't do it sneakily or under the table. It was quite open about it. It wasn't like they were stealing the money or cooking the books. They were really quite open, and it was just a difference of opinion about what rights they had. Did they have a right to claw back or not? I don't think so, Your Honor. Going into the hearing, AREC was claiming that it was entitled to 50% because there was a $6,000 base. It changed its position as the litigation developed. It said, well, actually, the reason it took that 50% was because there was a claw back. There is absolutely no evidence in the record, in the testimony, in the documents to support an agreement on a claw back. None, and the court found so explicitly. That's why it was deliberately and wrongful. It wasn't a matter of somebody saying, pushing a button and getting 25% rather than 50 or vice versa. Was there a request, just give us, just return the $1,500, the excess $1,500 that you kept, and you weren't entitled to it, give it, you know, give it to us. No, sir. Your Honor, by that point, the relationship between the parties was so bad, the trust had no confidence in AREC because of what AREC had done and a number of other things that had happened that were presented in the testimony in the bench trial. It wasn't a situation where $1,500 being returned would have been remotely adequate. The trust confidence in AREC was shattered, which is what the court found explicitly. Other things that the record will support that they did, just list one, one of the other things. I beg your pardon, Your Honor. You said that it wasn't just the withholding of that one payment for $1,500, but there were other things in the record too. Just give us one example of, and just one, of the other things that you believe that AREC did that was in violation. Well, as the court found, after that, a new letter came out saying that the AREC was not taking a very small amount of money because it was less than the $6,000. So AREC was still insisting that it was entitled to 50% of everything over $6,000, and there was absolutely no basis for that. The president of AREC acknowledged that. There is cross-examination that I conducted in which he acknowledged that it was important and there was no agreement. Okay, that's enough. Thank you. That answers my question, Your Honor. The question of materiality is a question of fact. The district court found as a matter of fact that the breach was material, and it doesn't have, there's nothing that says it has to be really material or seriously material or substantially material. The case law is that as a matter of fact, if the court finds that the breach was material, then the contract can be terminated. Well, so under Washington law, a material breach has to be one that substantially defeats the purpose of the contract. Yes, and that's a finding of fact that the district court made. So how did this defeat the purpose, just not paying, withholding $1,500, how did that defeat the purpose of the contract? The purpose of the contract, as each of the principals knew, was to maximize the income. When it got a chance to do so, AREC took twice as much as it was entitled to do. It asserted a claim that it was entitled to do that forever. In response to those two events, the trust terminated the contract. It wasn't a matter of $1,500. That's what AREC presents it as. But as the district court found after a two-day trial, there were significant issues involved, and the way that the AREC conducted itself and overreached and overcharged its testimony at trial about what it did and didn't do and why it was such that the court found that AREC had breached the confidence of the trust, and that was a finding of fact. The fact that that breach was predicated not just on the extra $1,500 taken for that payment but specifically was also other things that AREC did or didn't do? It did not. The court made its finding strictly on the $1,500 payment, didn't it? Well, not strictly. Well, strictly in the sense it's only $1,500, but strictly. The court made findings that here's three other things that AREC didn't do. It did not do that. The court said simply that it had wrongfully retained that AREC knew it wasn't entitled to it, did so anyhow, which made it wrongful. The court finds in the context of this agreement and the importance of every dollar collected by the trust that AREC's breach was material. The purpose of the trust's agreement with AREC was to maximize its royalty payments, etc., and AREC appeared to believe it was entitled to the 50% cut and would have continued to take that percentage had the trust not contacted Sony and asked that royalty payments be sent to the trust directly. AREC breached its material because it deprived the trust of a significant portion of the royalty payment it expected and irreparably damaged the trust's faith in AREC. Is there anything else to which I could respond? No. Okay, thank you, counsel. Thank you. Just briefly, the purpose of the contract was to maximize royalties to the trust, and that's what Artist Rights did. It performed its services. It increased the royalty rates that were being paid by Sony to the trust. The issue here is now the amount that is due to Artist Rights for those services rendered as its fee. That is the dispute here. The trust, to be clear, continues to enjoy the fruits of the efforts that Artist Rights performed. Before the complaint was filed here, the trust had Sony direct the statements and payments to itself, and before the complaint was filed, recovered for itself more than the $1,500 that Artist Rights had paid to itself in recoupment. To that extent, it already had engaged through self-help before the complaint was filed more than the amount that was at issue here. With that, unless the panel has any questions for me, I'll submit. Thank you, Your Honor. Thank you, counsel. We appreciate your arguments today, and this matter is submitted, and that will end. With that, we will adjourn for this session of the court. Thank you.
judges: Ebel, Paez, Bybee